Williams, Judge,
delivered the opinion of the court:
This case is before the court under an order granting; plaintiff’s motion for a new trial on the ground of newly discovered- evidence.
The petition asserts that there is a balance due the plain- • ('tiff for work performed under Navy contract no. 33631, of -'$34,195.23, as follows:
" 1. The -sum of $16,743.67, the Navy Department’s one- ■ fourth part of the cost to plaintiff of maintaining extra guards at its plant from December 4, 1917, to December 6,, 1918.
• 2. The sum of $17,451.56, which was deducted by the Comptroller General from the amount due plaintiff under the contract upon a final settlement of the same.
The amount deducted by the Comptroller General from, the amount due plaintiff under contract no. 33631 consisted of the items $16,743.67, which had been paid to the plaintiff' ■ by the War Department as that Department’s one-fourth ' part of the cost of maintaining the additional guards, and $707.89, which as liquidated damages had been assessed against the plaintiff and deducted from the amount due-plaintiff under another' contract and which had later been refunded to plaintiff by the War Department.
Upon the former hearing of the case we held that the plaintiff was not entitled to recover the amount claimed as compensation for maintaining extra guards at its plant during the period involved, for the reason that plaintiff had no ' contract, ¿xpress or implied, either with the Navy Department or the War Department, obligating the Government to pay such expenses. We held that plaintiff was entitled to recover $707.89, the sum deducted from the amount due . plaintiff under contract no. 33631, as liquidated damages due the United States from plaintiff under war contract no. 'Po 55 C.F., and judgment was awarded plaintiff, in that amount. The defendant in this proceeding does not contest, plaintiff’s right to recover as to' this item of the claim;.
*603 The special findings of fact as previously made have been amended to accord with the additional evidence adduced by plaintiff in the proceedings under the new trial.
The circular letter set forth in finding V did not direct plaintiff to install additional guards at its plant. The plaintiff was informed in the letter that it would be required to provide such additional watchmen and devices for protection of its plant and property, and the work in process for the Navy Department “ as may be required by the Secretary of the Navy,” and “that in case the Navy Department directs, the contractor to provide additional watchmen * * *, special arrangements will be made in each case to make a suitable modification in existing contracts so as to provide for such expense.” The provisions of the letter, which became a part of all existing contracts and those subsequently entered into between plaintiff and the Bureau of Supplies and Accounts of the Navy Department, only obligated the Government to contribute to the expense of maintaining such additional watchmen as the Navy Department should direct plaintiff to provide. The determination as to whether extra watchmen should be installed at plaintiff’s plant rested solely with the Secretary of the Navy. Unless, therefore, the Secretary of the Navy, or someone having authority to represent him, directed plaintiff to install the additional guards at its plant there existed no contractual liability on the part of the United States to compensate plaintiff, in whole or in part, for the cost incurred in their maintenance.
Lieutenant Commander Charles H. Davis, Jr., naval inspector of ordnance, and Lieutenant Colonel Thomas J. Smith, Jr., Army inspector of ordnance, who participated in the conference at plaintiff’s plant at the time it was determined that the security of the plant required the employment of extra guards and that they should be immediately installed, were not contracting officers. They were stationed at plaintiff’s plant charged with the duty of inspecting and examining for their respective departments articles and equipment, then being manufactured by plaintiff, to determine before acceptance by the Government whether such articles and equipment met contract requirements. It *604 is not shown that either of these officials had authority to act on any matter relating to plaintiff’s contracts outside of the performance of these duties. Inspector Davis therefore did not have authority, on behalf of the Navy Department, to require or direct plaintiff to install extra guards at its plant under the circular letter of October 16, 1917, or to contract with plaintiff in reference to the expense of maintaining such guards. The Navy Department did not thereafter confirm or ratify the unauthorized action of Inspector Davis in participating in the installation of the additional guards at plaintiff’s plant and did not at any time direct the plaintiff to provide them. Consequently no legal liability attached to the Government under the provisions of the circular letter to make “ special arrangements ” or suitable modifications for the additional expense incident to the maintenance of the guards.
The letter of November 22, 1918 (finding XIII) from the naval inspector of ordnance at plaintiff’s plant set forth a letter received by that official from the acting chief of the Bureau of Ordnance, which was obviously a circular letter addressed to all firms having ordnance contracts with the Navy Department. The instructions to naval inspectors to “ take steps to reduce as rapidly as possible the forces of guards and watchmen to the number normally necessary on a peace basis ” had reference only to such additional watchmen and guards as the Navy Department had “ directed ” contractors to provide at their plants and for whose expense arrangements had been made between the “ Navy Department and the contractor concerned.” The letter created no liability on the part of the Government to pay any part of the expense incurred in maintaining extra guards which the Navy Department had not directed contractors to provide, nor can it be construed as a recognition by the Navy Department of the authority of Inspector Davis to direct the installation of the extra guards at plaintiff’s plant or as a ratification of his unauthorized action in so doing.
The plaintiff contends that in the event it be held there was no express contract providing that the Government would pay, on behalf of the Navy Department, one-fourth part of the expense of maintaining the additional guards *605 it is entitled to recover the amount claimed on an implied contract. In support of this contention numerous cases are cited in which the rule is announced that where a party enters into an agreement with a representative of the Government, even though such agreement be not reduced to writing, and the representative of the Government had no authority to make the agreement, the party may recover the value of the services rendered under the contract, if he has performed in accordance with its terms, and such services have been accepted by the Government.
There is no question as to the correctness of this rule and it has been applied by this court in many cases. The right to recover in such cases is limited to the reasonable value of the services performed and accepted. It must appear that the Government received and accepted the services performed and that it derived the benefit of them. In this case the plaintiff received the direct benefit of the services of the additional guards at its plant. They were guarding and protecting its plant and property. They were its guards. Plaintiff under its contracts could receive pay for only such equipment and supplies as it actually delivered to the Government. The proper guarding of its premises was therefore a matter of vital concern to plaintiff, both for the protection of its plant and property, and to assure it the profits arising from the performance of its contract. The Government no doubt derived an indirect benefit from the proper guarding of plaintiff’s plant in that a prompt delivery of the materials covered in its contracts with plaintiff was made more certain, but the primary benefit of the services performed by the additional guards inured to plaintiff. In these circumstances no contract can be implied obligating the Government to bear any part of the expenses of their maintenance. B. & O. Railroad Co. v. United States, 261 U.S. 592; Jacob Reed's Sons, Inc., v. United States, 60 C.Cls. 97. The cases cited by plaintiff in support of the contention that recovery of the Navy Department’s one-fourth part of the cost of maintaining the additional guards may be had upon an implied contract have no application to the facts in this case.
*606 What has been said in. reference to the claim against the Navy Department applies in the main to the claim against the War Department for its one-fourth part of the cost of' maintaining the additional guards. Lieutenant Colonel Thomas J. Smith, Jr., as we have seen, was not a contracting officer on behalf of the War Department. He had no-authority to direct the plaintiff to employ additional guards at its plant or to bind the Government to pay any part of the expense of maintaining such additional guards. At the-time the conference was held in which Colonel Smith participated, when it was determined that additional guards should be installed, plaintiff had received no communication from the War Department concerning the matter of employing additional guards. Neither the Secretary of War, nor any official of the War Department having .authority to represent him ever at any time either before or subsequent to the installation of the guards, and during the period of their employment, required or directed plaintiff to provide them, nor was the unauthorized action of Colonel Smith in agreeing that the War Department would bear one-fourth part of the cost of the additional guards ever ratified or confirmed by the War Department.
The contract made and executed on March 8,1919, between Major B. H. Hawkins of the Ordnance Department of the Army and the plaintiff, in which it was agreed that plaintiff would furnish the necessary labor, material, and superintendence to adequately guard, police, and protect plaintiff’s plant for the period from December 4,1917, to December 31, 1918, and that the United States would pay plaintiff one-fourth part of the actual cost of maintaining such extra guards and police force, in monthly installments as soon after the first of each month as practicable, each installment to comprise one-fourth of all costs incurred and paid by plaintiff during the preceding month, was void for want of consideration on the part of the United States. The contract was executed more than fifteen months after the first of the extra guards had been installed and more than three months after the last of them had been discharged. Its provisions were manifestly impossible of performance. No *607 services could be, and none were rendered by the plaintiff under it. The services required of the plaintiff under the contract had been completely performed before it was executed. At the time the contract was entered into the plaintiff had unpaid bills pending in the War Department for the identical services covered by the contract, in support of which plaintiff had submitted affidavits that the services had ■been rendered under a contract entered into between plaintiff and the War Department before the additional guards had been installed. In these circumstances the contract of March 8, 1919, was one the contracting officer, Major Hawkins, had no authority to make and the United States was not bound by it. William Tod Wilcox v. United States, 56 C.Cls. 224. If the plaintiff’s claim against the War Department for one-fourth part of the cost of the extra guards was based on a • contract, express or implied, the contract of March 8, 1919, added nothing to plaintiff’s legal rights. If the claim was not based on such a contract it was invalid and unenforcible against the United States and could not be vitalized into a legal claim by a subsequent contract. Agents and officers of the Government have no authority to give away the money or property of the United States, either directly or under the guise of a contract that obligates the Government to pay a claim not otherwise enforcible against it.
As there was no legal contract, express or implied, with ■either the Navy Department or the War Department obligating the United States to pay the amounts claimed for compensation on account of the expense incurred in maintaining additional guards at its plant during the period in question, the plaintiff’s claim must fail. The plaintiff was not entitled to be paid $16,743.67 received by it from the War Department and that amount was properly deducted by the Comptroller General in making settlement with the plaintiff under contract no. 33631. The counterclaim as to this item is sustained.
Since the defendant does not now contest the plaintiff’s right to recover the sum of $707.89, the amount of the judgment awarded it upon the former trial, that item of the claim need not be discussed.
*608 The plaintiff is entitled to recover and is awarded a judgment in the sum of $707.89.
GreeN, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, took no part-in the decision of this case.